## Case No. 72.

### ADAMS & W. MANUF'G CO. v. ST. LOUIS WIRE-GOODS CO.

[3 Ban. & A. 77;[1] 12 O. G. 940; Fent. Pat. 31.]

Circuit Court, E. D. Missouri. Sept., 1877.

PATENTS FOR INVENTIONS — INFRINGEMENT — KNOWN PROCESS — PRELIMINARY INJUNCTION — AFFIDAVIT.

1. The improvement in sieves for which letters patent No. 106,597 were granted to Robert J. Mann, August 23, 1870, and of which the complainant is the owner, being construed by the court to consist in a combination of the hoop and sieve cloth, when the edge of the sieve cloth is clasped in the hoop and there fastened by swaging: Held, that the patent is not infringed by making a wire sieve connected with the rim, which is fastened by what is known as double-seaming, inasmuch as double-seaming is a mode of fastening known long before the date of the patent.

2. On a motion for a preliminary injunction, the court may consider certain matters independent of the affidavits, such as general principles supposed to be known to every one of ordinary intelligence.

3. The design patent No. 4637, granted to Robert J. Mann, February 7th, 1871, for a flaring rim for sieves, whereby they will nest together, possesses no novelty, even if it were a design which would properly come within the patent law.

In equity. This bill was brought to restrain the alleged infringement of letters patent No. 106,597, dated August 23d, 1870, for improvement in sieves, and letters patent No. 4,637, dated February 7th, 1871, for design for sieves, both granted to Robert J. Mann.

Coburn & Thacher, for complainant.
S. S. Boyd, for defendant.

---

[1][Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

TREAT, District Judge.[2] I have received a note from counsel for plaintiff, in which they desire the result of the action of the court to be certified to them. I have not had time to write an opinion in this matter. But as this case has been presented in a hurried way, as the court was very much occupied at the time, and as it will come up hereafter on its merits, I will merely state the conclusions so far as this motion is concerned. The claim in the patent is for: "The combination of the hoop A and sieve-cloth C when the edge of the sieve-cloth is clasped within the hoop and thus fastened by swaging, substantially as and for the purpose specified and shown."

Without going into an elaborate disquisition with regard to these matters, it must suffice that this patent has been twice established as a valid and subsisting patent, and for the purposes of this motion must be so treated by this court. Thereupon, only one inquiry is presented: Is the sieve, as used by defendant, an infringement thereon? If we go through the mechanical combination involved in their use by the defendant, and into the mechanical combination for which the plaintiff, as assignee, has a patent, we will find, according to the claims of the patent, the essential element is, that the sieve is placed into proper position with regard to the hoops, and swaged, which results in tightening the sieve below, and produces this convenient effect in the form indicated, whereby the rim remains, so that the plaintiff's sieve, thus produced, may effect results which sieves of this character are intended to produce. Now, plaintiff does not claim, and cannot claim, that the wire sieve is, simply in connection with the rim, patentable, because both of those things existed anterior to his patent. What, then, is his patent? It is that, in connection with a metallic rim, he produces a curve by swaging, which works out the results here shown. On the other hand, defendant takes the wire sieve, which is not new at all, connected with the rim, which is fastened by what is known in the mechanical arts as "double-seaming." There is nothing new in double-seaming. It is a mode known long before this patent as one for fastening not only lid-heads of cans, etc., but for a variety of other purposes. Hence, for the purposes of the present motion, it is only necessary for this court to determine first, that the essential element in plaintiff's patent is a combination of a hoop with a sieve-cloth, whereby the edge of the sieve-cloth is clasped within the hoop, and fastened by swaging. Now, the connection of a sieve-cloth with the hoop, in itself, is not his patent, unless the swaging follows. And he had no patent except for the combination. It is a combination patent. Swaging is the important element in determining

[2][This opinion was stenographically reported, and afterwards revised by the judge.]

this patent. What is swaging? It is a mechanical device whereby compression is produced in a variety of forms other than a plane surface, whether it be curved, hexagonal or otherwise. The essential element and advantage of the patent of the plaintiff is, that by swaging he fastens his sieve to the rim by a swaging process, which tightens the sieve itself, and thereby necessarily produces the rim below, so that the sieve itself does not rest on a line with that rim. Thus, if it were brought over externally with regard to it, the sieve would rest on the rim, but, by being swaged in the mode here indicated, not only produces the rim but tightens the sieve-head by but one operation, and, so far as the swaging is concerned, produces the required result.

The defendant simply resorts to an old and well-known mode of double-seaming, which is entirely distinct and different from plaintiff's mode. Double-seaming is simply double-bending a metallic material so that the wire of the sieve passes through one hoop with another over it, and thus, by fastening the sieve together, retains its position without swaging at all. There is nothing new in the double-seaming process as a mode of fastening. You may fasten a preserve or any other can by the double-seaming process, which is entirely simple in itself—old and well known to every housewife and every mechanic. But swaging is an entirely different matter. It is the producing of a given form and given result by the use of what are known as "swaging tools," which tools produce from the two parts any form that you desire produced. Thus a straight impression, parallel, as two hooks, produced by compression, is no swaging at all. By swaging you may make them take any desired form. If you wish to produce a curved form, and one tool is pressed convex against a concave surface, the material between will take the curved form. There is nothing new at all or strange in placing two things parallel with each other, and with sufficient application of force squeezing them together. There is nothing new in that. It is as old as the use of two parallel forces. But, by the use of swaging, you may give any form you desire, consequent upon the use of swaging-tools. This patent, then, is for the use of a swaging-tool, in the manner described in the claim, which accomplishes the result therein stated.

The defendant uses no swaging-tool, but resorts to the old and well-known mode of double-seaming. This is the essential element on which this bill is founded.

The second element is for a design patent. But, before passing on that, I will remark that, looking at the affidavits filed by the plaintiff and defendant with regard to the alleged infringement of the combination patent, if the matter rested solely on the affidavits, the weight of testimony would be entirely against the plaintiff. But there are

certain matters. as the supreme court of the United States has decided, consonant with right reason, which the court can always consider independent of affidavits—such general principles as are supposed to be known to every one of ordinary intelligence. Now, every one of ordinary observation and intelligence has known for a long period of time what double-seaming is, and, though he may not have known the name, he may or may not have known what swaging is. The testimony before the court shows what swaging is, and in the light of these matters the court determines that it is an essential element to plaintiff's patent, that swaging should be used in connection with his hoop and tightening process.

The second matter involved in his bill is what is called a "design patent," concerning which there are one or more affidavits presented. This is the question to be considered first. What is a design patent? Complainant insists that he is assignee of the design patent, whereby through flaring—a conical section—these sieves may be nested. Without going into the discussion whether this is, within the meaning of the patent law, a design patent, which is extremely doubtful, it must suffice to say that, in the light of the affidavits and common experience, the alleged design is nothing new. And even if it fell within the meaning of the patent law, as a patentable design, there is no novelty in it. Putting one thing in another, and making it a little flaring instead of rectangular, is an old matter.

Third. Plaintiff claims that this defendant has infringed his trade-mark. He says that his product is called a "metallic sieve." and puts it on the market as "Mann's metallic sieve." This is his trade-mark. Defendant's sieve bears the name of this corporation—"The St. Louis Wire Goods Company." Defendant sends its product on the market under its specific brand. So far as any pretence exists here that the trade-mark exists in the words "metallic sieve," disconnected from the words "Mann's metallic sieve," there can be no foundation for an injunction. The metallic sieve is nothing new. It is well-known. But if this defendant had designated his sieve "Mann's metallic sieve," he would have infringed his trade-mark. He stamps on the metallic sieve his own name, thus indicating that it is his own manufacture, and consequently he does not fall within any rule known to trade-marks. [See note to Alleghany Fertilizer Co. v. Woodside, Case No. 20.] This matter has been thrust upon me in the midst of other business, and I have not had time to write an opinion; but it is immaterial in this stage of the inquiry. I treat the patent as valid, and I treat as an essential element of that patent the swaging process whereby plaintiff's result is produced. As defendant's result is obtained by other than the swaging process, there is no infringement.

The defendant's product is produced by double-seaming, which is entirely distinct and separate from swaging, and known long before this patent was issued. As to the designed patent, it is doubtful whether it falls within the purview of the patent law. If it does it has no novelty. As to plaintiff's trade-mark, it is not used by defendant, and hence the motion for provisional injunction is refused.